**ART HASAN, CA Bar No. 167323**
ahasan@lewisroca.com
**G. WARREN BLEEKER, CA Bar No. 210834**
wbleeker@lewisroca.com
**DREW WILSON, CA Bar No. 283616**
dwilson@lewisroca.com
**LEWIS ROCA ROTHGERBER CHRISTIE LLP**
**655 N. Central Avenue, Suite 2300**
**Glendale, CA 91203-1445**
**Telephone: (626) 795-9900**
**Facsimile:  (626) 577-8800**

Hua Chen (SBN 241831)
Calvin Chai (SBN 253389)
ScienBiziP, P.C.
550 S. Hope Street, Suite 2825
Los Angeles, California 90071
Telephone:  (213) 426-1771
Facsimile: (213) 426-1788
huachen@scienbizippc.com
Calvinchai@scienbizippc.com

*Attorneys for Plaintiff*
*FOSHAN LIYAN UNDERGARMENT CO., LTD.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FOSHAN LIYAN UNDERGARMENT CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>ROADGET BUSINESS PTE. LTD.,<br><br>Defendant. | Case No. 2:23-cv-06557-AB-RAO<br><br>**FIRST AMENDED COMPLAINT FOR:**<br>**(1) MISREPRESENTATION UNDER 17 U.S.C. § 512(f)**<br>**(2) DECLARATORY JUDGMENT OF NO COPYRIGHT OWNERSHIP**<br><br>**Jury Trial Demanded** |

-1-

123771362.4

Plaintiff Foshan Liyan Undergarment Co., Ltd. ("Liyan" or "Plaintiff") hereby brings this First Amended Complaint against Roadget Business Pte. Ltd. ("Roadget" or "Defendant") and alleges as follows:

## THE PARTIES

1. Liyan is a corporation organized and existing under the laws of China, with a place of business located at No. 350, Longyong Village, Yanbu, Dali Town, Nanhai District, Foshan City, Guangdong Province, China.

2. Roadget is a private limited company duly organized and existing under the laws of Singapore. Roadget has a registered business address at 12 Marina Boulevard, #15-01, Marina Bay Financial Centre, Singapore 018982. Roadget claims to be the owner of the SHEIN trademarks in the United States. Roadget owns SHEIN US Services, LLC, which itself owns and operates the website located at https://us.shein.com and the corresponding mobile application.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because the claims arise out of federal questions concerning copyright pursuant to 17 U.S.C. § 101 *et seq*.

4. This Court has personal jurisdiction over Roadget because it has conducted business in the State of California, and because it has maintained continuous and systematic contacts with the State of California. Roadget has purposefully availed itself of the privilege of doing business in California and in this District through its marketing and sales activities directed at California residents, including by allowing California residents to purchase products through its and/or its affiliates' website, causing those products to be shipped to California residents, and using advertising and social media to target consumers in California to join its platform and purchase its products. Personal jurisdiction also exists over Roadget pursuant to FRCP 4(k)(2) given Roadget's significant contacts with the

United States as a whole and its lack of identified amenability to suit in any specific state.

5. Venue properly exists in this District pursuant to 28 U.S.C. § 1391 (b)(1) and (c). Roadget is not a resident in the United States and may be sued in any judicial district. Additionally, venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b) as Roadget transacts business in this District. Defendant uses social media to target consumers in California to join its platform and purchase its products. The acts complained of have and will continue to have substantial effects in this District.

6. Roadget filed a motion under Federal Rule of Civil Procedure 12(b)(6) in this matter without raising a personal jurisdiction objection. Therefore, it has waived any defense for lack of personal jurisdiction.

## BACKGROUND

7. In the past decade, a new retail approach in the apparel industry known as "ultra-fast fashion" has risen in prominence. Ultra-fast fashion retailers release new clothing or apparel styles on a weekly or even daily basis. Ultra-fast fashion retailers offer a huge number of ever-changing styles for extraordinarily low prices. The success of ultra-fast fashion retailers depends on their ability to source products from manufacturers who can create fast designs and/or respond to rapid changeover from one product style to another.

8. SHEIN is an online ultra-fast fashion retailer that claims to be headquartered in Singapore since 2022. Its business originated in China, and a significant majority of its employees and management team, along with the bulk of its business operations, remain in China and unchanged. Defendant Roadget is SHEIN's parent company. In the United States, the SHEIN-branded goods and services are primarily sold by Roadget's affiliate and licensee, Shein Distribution Corporation through the website at https://us.shein.com and through the corresponding mobile application (the "SHEIN eCommerce Platform"), both of

which are owned indirectly by Roadget. A wide range of SHEIN branded fashion products, including women's apparel, are available for purchase through the SHEIN eCommerce Platform.

9. TEMU is an online shopping platform launched in the U.S. in September of 2022. It operates as a third-party marketplace allowing third-party vendors like Liyan to sell and ship directly to U.S. customers without having to rely on warehouses in the U.S. TEMU is operated online at https://www.temu.com and through the corresponding mobile application (the "TEMU eCommerce Platform"). Like SHEIN, the TEMU eCommerce Platform offers a wide variety of products for sale, including women's apparel. Indeed, in a recent lawsuit against TEMU, SHEIN labeled TEMU as a direct competitor and alleged that TEMU sells competing, and sometimes identical, products.

10. Liyan was founded in 2016. It specializes in the design, manufacture, and sale of women's undergarments. Liyan advertises and sells its products through Chinese online retail platforms such as 1688.com, Tmall, Taobao, and Pinduoduo.

**GENERAL ALLEGATIONS**

11. On or about March 2022, Roadget and Liyan entered into a buyer-seller relationship for the sale of undergarment apparel.

12. A SHEIN employee introduced Liyan to a photography studio known as Guangzhou Dongyuan Media Co., Ltd. ("Dongyuan Media"), located in Guangzhou City, Guangdong Province, China to obtain realistic images of models wearing the undergarments Liyan manufactured. Dongyuan Media is not owned, controlled, or affiliated with Roadget.

13. Liyan worked directly with Dongyuan Media to produce photographs of its women's undergarments ("Commissioned Photographs"). Liyan arranged for the delivery of its products and selected the models. Liyan directed all the details of the photography, instructing Dongyuan Media not to stuff the bras, making decisions regarding the inclusion of straps, and deciding when to retake and how

123771362.4

to adjust certain photographs. While a SHEIN employee was copied on Liyan's communications with Dongyuan Media, the SHEIN employee provided no input or feedback regarding any of the foregoing activities. A copy of the Commissioned Photographs is attached as Exhibit A.

14. Dongyuan Media transmitted all final image files to Liyan and billed Liyan directly for its work. Liyan paid all the fees Dongyuan Media charged Liyan for the Commissioned Photographs. On information and belief, Liyan's Commissioned Photos were uploaded to SHEIN's eCommerce Platform with a designation that they were the vendor's (Liyan's) photographs.

15. No ownership interest in the Commissioned Photographs was ever transferred to Roadget, and Roadget was no longer authorized to use the Commissioned Photographs when the parties ended their business relationship. In contrast, Liyan's future use of the Commissioned Photographs was unrestricted because Liyan commissioned the photographs without the involvement or payment therefor by Roadget. Roadget was at all times familiar with the scope of Liyan's rights in the Commissioned Photographs (and Roadget's lack of rights to same).

16. After the Commissioned Photographs were completed in October 2022, Liyan noticed a significant reduction in the order volume from Roadget. Roadget stopped purchasing products from Liyan completely in December 2022. The business relationship between Liyan and Roadget ended around the same time. At that time, Liyan had considerable inventory and additional fabric and raw material that were ordered and inventoried in anticipation of more orders from Roadget.

17. On information and belief, Roadget had secretly secured alternative manufacturing sources for making the same undergarment products that Roadget previously ordered from Liyan. After the relationship ended in or around December 2022, Roadget continued to use the Commissioned Photographs, without

123771362.4

permission, to promote sales of the undergarment products Roadget sourced from alternative suppliers.

18. After the parties ended their business relationship, Liyan repeatedly demanded that Roadget stop using the Commissioned Photographs that Liyan arranged and purchased from Dongyuan Media. Roadget ignored Liyan's demand.

19. Liyan registered a seller account with TEMU in September 2022. Liyan started selling its undergarment products on the TEMU eCommerce Platform on or about January 2023. The products Liyan sold on the TEMU eCommerce Platform include the Liyan styles that Roadget ordered from Liyan in 2022 and to which Liyan owned the rights. Liyan used its Commissioned Photographs in connection with its TEMU listings.

20. On February 22, 2023, TEMU received a take-down notice from an in-house legal counsel at Roadget's intellectual property department, issued pursuant to Section 512(c) of the Digital Millennium Copyright Act (the "First DMCA Notice"). The First DMCA Notice falsely claimed that Roadget was the owner of certain copyrighted materials hosted on TEMU's website in connection with listing ID Nos. 601099513573152, 601099513519543 and 601099513282978, among others. The allegedly copyrighted materials were attached to the notice. Roadget demanded that TEMU immediately remove these copyrighted materials from TEMU's website. The copyrighted material at issue included a subset of the Commissioned Photographs used for the promotion of Liyan's undergarment products on SHEIN's eCommerce Platform in 2022. Roadget stated in the notice that it had "a good faith belief that the disputed use of the copyrighted material identified above is not authorized by the copyright owner, its exclusive licensee, its agent, or under the law." Roadget further certified "under the penalty of perjury that the information contained in the notification is true to the best of my knowledge, and I have the authority to act on behalf of Roadget Business Pte. Ltd., the owner and exclusive licensee of the copyright(s) involved."

A copy of the First DMCA Notice including the attached copyrighted materials owned by Liyan is attached hereto as Exhibit B.

21. On March 13, 2023, TEMU received a second DMCA take-down notice from Roadget's legal department (the "Second DMCA Notice"). The Second DMCA Notice falsely claimed that Roadget was the owner of certain copyrighted materials hosted on TEMU's website. The copyrighted materials, including listing ID 601099513586801, were attached to the notice. Roadget demanded that TEMU immediately remove these copyrighted materials from TEMU's website. The copyrighted material at issue included a subset of the Commissioned Photographs used for the promotion of Liyan's undergarment products on SHEIN's eCommerce Platform in 2022. Roadget stated in the notice that it had "a good faith belief that the disputed use of the copyrighted material identified above is not authorized by the copyright owner, its exclusive licensee, its agent, or under the law." Roadget further certified "under the penalty of perjury that the information contained in the notification is true to the best of my knowledge, and I have the authority to act on behalf of the owner and exclusive licensee of the copyright(s) involved." A copy of the Second DMCA Notice including the attached copyrighted materials owned by Liyan is attached hereto as Exhibit C.

22. On May 10, 2023, TEMU received a Third DMCA takedown notice from Roadget's legal department (the "Third DMCA Notice"). The Third DMCA Notice falsely claimed that Roadget was the owner of certain copyrighted photos and designs. The notice claimed TEMU is offering for sale products containing content that infringes Roadget's copyrighted material. The copyrighted materials, including listing ID 601099513584585, were attached to the notice. Roadget demanded that TEMU immediately remove the infringing content from TEMU's website. The copyrighted material at issue included a subset of the Commissioned Photographs used for the promotion of Liyan's undergarment products on SHEIN's eCommerce Platform in 2022. Roadget stated in the notice that it had "a good faith

123771362.4

belief that the disputed use of the copyrighted material identified above is not authorized by the copyright owner, its exclusive licensee, its agent, or under the law." Roadget further certified "under the penalty of perjury that the information contained in the notification is true to the best of my knowledge, and I have the authority to act on behalf of Roadget Business Pte. Ltd., the owner and exclusive licensee of the copyright(s) involved to send DMCA take-down notices ...." A copy of the Third DMCA Notice including the attached copyrighted materials owned by Liyan is attached hereto as Exhibit D. Collectively, Exhibits B-D are referred to as the "DMCA Notices."

23. The above are just a sample of the DMCA takedown notices served by Roadget against Liyan's listings that used the Commissioned Photographs that were filled with knowing material misrepresentations. A number of the above listing IDs were subject of a barrage of takedown notices for the same listing. For example, listing ID 601099513282978 was the subject of at least six DMCA takedown notices. Listing ID 601099513573152 was the subject of at least seven DMCA takedown notices.

24. On January 11, 2024, during the parties' Local Rule 7-3 prefiling conference of counsel, Roadget's outside litigation counsel admitted that Roadget did not own the copyrights in the Commissioned Photographs that were identified in the DMCA Notices, in that it stated that the copyrights were probably owned by the photographer who took the photographs.

25. Based on the facts and circumstance set forth above, Roadget knew (1) Liyan handled all artistic arrangements of the Commissioned Photographs with Dongyuan Media; (2) Liyan paid for the Commissioned Photographs; (3) Roadget had no involvement in the arrangement of the Commissioned Photographs; (4) Roadget did not take the photographs of the Commissioned Photograph images; (5) Roadget did not pay for the Commissioned Photographs; (6) Roadget did not own or have an exclusive license to the copyrights Commissioned Photographs; (7)

Roadget did not own the copyright in the underlying undergarments; (8) Roadget's right to use the Commissioned Photographs terminated when the parties ended their relationship; (9) Liyan had an unrestricted right to use the Commissioned Photographs because they were not taken by Roadget; and (10) Liyan was not committing infringement of any copyright, much less a copyright that Roadget owned.

26. Roadget's legal department, specifically the portion of Roadget's legal department *dedicated to intellectual property protection,* issued the DMCA Notices and falsely asserted Roadget owned the copyright rights to the Commissioned Photographs. Roadget had first-hand actual knowledge that Roadget did not own the copyright rights, had no colorable claim of such ownership, nor did Roadget have an exclusive license to the copyright for the Commissioned Photographs that were identified in the DMCA Notices. Roadget had first-hand personal knowledge that Roadget was not acting as an "agent" of the copyright owner of the Commissioned Photographs identified in the DMCA Notices. Roadget had first-hand, personal knowledge that, despite the material misrepresentations it made in the DMCA Notices, Liyan's use of the Commissioned Photographs that were identified in the DMCA Notices were authorized by law. Accordingly, Roadget had first-hand personal knowledge that Liyan's uses of the Commissioned Photographs that were identified in the DMCA Notices on the TEMU Platform were authorized and did not constitute copyright infringement.

27. On information and belief, Roadget did not evaluate whether Liyan's uses of the Commissioned Photographs that were identified in the DMCA Notices were permitted under a compulsory or implied license, such as a license from Dongyuan Media to Liyan. The name of Liyan's storefront on TEMU is "Liyan Bra," Roadget could easily identify the entity that operated the storefront.

28. To the extent that members of Roadget's intellectual property team

123771362.4

who sent the DMCA Notices allege they were not aware of Roadget's lack of ownership and lack of exclusive licenses of the Commissioned Photographs that were identified in the DMCA Notices, they were willfully blind of this information and should have known this information. A simple investigation, which any entity has a duty to do before sending a DMCA notice, would have revealed Roadget's lack of ownership, Roadget's lack of authorization to use and Liyan's lawful use of the Commissioned Photographs.

29. Roadget's statements made in the DMCA Notices were knowing and material misrepresentations as to the ownership of the copyrights of the Commissioned Photographs identified in the DMCA Notices, Roadget's right to file the notices, and that copyright infringement had occurred.

30. Roadget's statements made in the DMCA Notices were knowingly false and baseless, under any applicable standard; they were subjectively and objectively baseless.

31. TEMU removed five Liyan listings from its eCommerce Platform in response to three of Roadget's DMCA Notices. The removed listings are (i) listing ID 601099513573152, entitled "Women's Breathable Glossy Non-slip Half Cup Push Up Bra, Comfortable Strapless High Stretch Bra, Women's Lingerie & Underwear;" (ii) listing ID 601099513519543, entitled "Women's Solid Glossy Detachable Strap Bra, Thin & Comfortable High Stretch Bra, Women's Lingerie & Underwear;" (iii) listing ID 601099513282978, entitled "Sexy Glossy Deep V Push Up Scoop Bra, Solid Thick Pad, High Stretch Women's Lingerie & Underwear;" (iv) listing ID 601099513584585, entitled "Contrast Mesh Push Up Bra, Comfy & Breathable Everyday Bra, Women's Lingerie & Underwear" and (v) listing ID 601099513586801, entitled "Lace Edge Push Up Bra, Comfort Thick Cup Knitted Fabric Everyday Bra, Women's Lingerie & Underwear."

32. Liyan had made continuous and substantial sales of the products under the removed listings on the TEMU eCommerce Platform prior to their removal.

-10-

123771362.4

Roadget's take-down notices have disrupted Liyan's ability to sell the products embodied in listing ID Nos. 601099513573152, 601099513519543, 601099513282978, 601099513584585, and 601099513586801 on the TEMU eCommerce Platform.

33. On information and belief, these knowingly false and misrepresentative "good faith belief" statements were made with the specific intention to deceive the DMCA compliance department at TEMU into believing that Roadget was the copyright owner of the Commissioned Photographs, and that Liyan's use of the copyrighted materials in the DMCA Notices, including the Commissioned Photographs, was not allowed by the copyright holder or law.

34. On information and belief, Roadget's false and misrepresentative statements were made with the specific intent of unlawfully removing the content that was the subject of the DMCA Notices, and to take down the associated product listings so that Roadget could unfairly compete with Liyan.

35. The DMCA Notices were a sham. Roadget's intention to unfairly compete with Liyan by removing its competitive listings is further demonstrated by the fact that even though Liyan filed the first complaint on August 11, 2023, and Roadget's outside litigation counsel in this matter acknowledged that as of January 11, 2024, Roadget is not the copyright holder or exclusive licensee for the Commissioned Photographs identified in the DMCA Notices, Roadget has still not rescinded the notices. Thus, to this day, Roadget continues to falsely represent that it is the owner of the copyright rights for the Commissioned Photographs.

36. Further demonstrating that these DMCA Notices were a sham, filled with knowing, subjectively baseless, material misrepresentations designed to harm Liyan, is the fact that Roadget is being sued by TEMU in the District of Columbia, Case No. 1:23-cv-3706, for abuse of the DMCA by sending hundreds of false DMCA takedown notices to TEMU containing material misrepresentations regarding both Roadget's ownership of copyrighted materials and the existence of

infringement by sellers on TEMU.

37. On information and belief, Roadget has a history of abusing the DMCA procedures both to harm TEMU, and to retaliate against vendors who once sold their products on SHEIN and now sell their products on TEMU. Liyan is yet another victim of Roadget's history of abuse.

38. Roadget's continued wrongdoing has caused, is causing, and will continue to cause irreparable harm to Liyan and its business. These repeated false notices and removing of Lyan's listings harmed the goodwill of Liyan and the continuity and availability of its products on TEMU.

**COUNT 1: MISREPRESENTATION UNDER 17 U.S.C. § 512(f)**

39. The allegations of paragraphs 1 through 38 are incorporated herein by reference with the same force and effect as if set forth in full below.

40. By submitting the three DMCA notices to TEMU, Roadget knowingly and materially misrepresented that Liyan had committed copyright infringement by posting the Commissioned Photographs on TEMU. Roadget actually knew or was willfully blind to the fact that the DMCA notices misrepresented: (1) Roadget's ownership interest in the Commissioned Photographs; (2) that Roadget had the right to send the notices; (3) that Liyan's TEMU listings contained infringing content.

41. Roadget's statements as to ownership of the copyrights and authority to act in the DMCA Notices were objectively and subjectively unreasonable, and were a sham meant to enable Roadget to unfairly compete with Liyan.

42. TEMU removed certain Liyan listings from the TEMU eCommerce Platform in response to Roadget's DMCA Notices.

43. As a result of Roadget's knowing and material misrepresentations, Liyan is entitled pursuant to 17 U.S.C. § 512(f) to all damages, including costs and attorneys' fees, which it incurred as the result of TEMU's reliance upon Roadget's misrepresentations.

-12-

123771362.4

44. As a direct and proximate cause of Roadget's misrepresentations, Liyan has suffered, is suffering, and will continue to suffer substantial damage to its business in the form of lost profits and injury to goodwill and reputation.

45. Liyan will be irreparably injured by the continued acts of Roadget, until and unless such acts are enjoined. Liyan has no adequate remedy at law.

**COUNT 2: DECLARATORY JUDGMENT THAT ROADGET HAS NO OWNERSHIP AND NO COLORABLE CLAIM OF OWNERSHIP OF THE COPYRIGHT RIGHTS TO THE COMMISSIONED PHOTOGRAPHS**

46. The allegations of paragraphs 1 through 45 are incorporated herein by reference with the same force and effect as if set forth in full below.

47. An actual case or controversy exists concerning whether Roadget has ownership of the copyrights of the Commissioned Photographs that Roadget identified in the DMCA Notices.

48. Roadget affirmatively asserts ownership of the copyrights to the Commissioned Photographs identified in the DMCA Notices and has used that claim of ownership to take Liyan's use of the images down from TEMU. To this day, Roadget continues to assert such ownership, as evidenced by the fact that Roadget has refused to withdraw or rescind its improper DMCA Notices.

49. Liyan disputes that Roadget has any ownership, or any colorable claim of ownership, as to the copyright rights to the Commissioned Photographs. Liyan worked directly with Dongyuan Media to produce photographs of its women's undergarments that are the subject of the DMCA Notices. Liyan arranged for the delivery of its products and selected the models. Liyan directed all the details of the photography.

50. Dongyuan Media transmitted all final image files to Liyan and billed Liyan directly for its work. Liyan paid all the fees Dongyuan Media charged Liyan for the Commissioned Photographs.

123771362.4

51. Roadget did not receive a license or other ownership rights in the Commissioned Photographs. In contrast, Liyan's future use of the Commissioned Photographs was unrestricted because Liyan commissioned the photographs without the involvement or payment therefor by Roadget.

52. Neither Liyan nor Dongyuan Media ever transferred copyright ownership of the photographs that are the subject of the DMCA Notices to Roadget.

53. On January 11, 2024, Roadget's own outside counsel admitted in the parties' Local Rule 7-3 conference of counsel that Roadget was not the owner of the copyrights to the images identified in the DMCA Notices.

54. There are no facts to support Roadget's assertion that it owns any copyright rights to the Commissioned Photographs.

55. Despite the above facts, Roadget refuses to withdraw or rescind its improper DMCA Notices, and therefore continues to falsely assert and claim its ownership of the copyrights of the Commissioned Photographs identified in the DMCA Notices.

56. Based on the above facts, Liyan is entitled to declaratory judgment that Roadget has never had ownership and has never had any colorable claim of ownership of the copyrights for the Commissioned Photographs identified in the DMCA Notices.

## PRAYER FOR RELIEF

WHEREFORE, Liyan respectfully requests the Court to enter judgment as follows:

A. That Roadget and their subsidiaries and affiliated companies, their respective officers, directors, agents, servants, employees, representatives, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction order by personal or other service be preliminarily and permanently enjoined from (1) sending DMCA notices or notices of claimed infringement to TEMU concerning Liyan; (2) sending any other complaints

-14-

123771362.4

containing allegations of infringement or other wrongdoing to Liyan's third party Internet service providers or other vendors of goods and/or services; and (3) interfering in any way with Liyan's sale of undergarment products on the Internet;

B. An injunction requiring Roadget to (1) rescind its DMCA notices to TEMU with respect to Liyan; (2) retract its allegations of infringement and/or other wrongdoing sent to TEMU with respect to Liyan; and (3) cease use of the Comissioned Photographs for any purpose.

C. Declaratory judgment that Roadget has no ownership and no colorable claim of ownership in any of the photographs that were the subject of the DMCA Notices;

D. Damages according to proof;

E. That the Court award Liyan pre-judgment interest;

F. That Roadget be required to pay to Liyan its costs in this action, including all costs and attorney's fees; and

G. For such other and further relief as the court deems just and proper.

Dated: February 9, 2024

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By  /s/ G. Warren Bleeker
Art Hasan
G. Warren Bleeker
Drew Wilson

*Attorneys for Plaintiff*
*FOSHAN LIYAN UNDERGARMENT CO., LTD.*

123771362.4

**DEMAND FOR A JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Liyan hereby requests a trial by jury on all issues so triable.

Dated: February 9, 2024

Respectfully submitted,

LEWIS ROCA ROTHGERBER CHRISTIE LLP

By  /s/ G. Warren Bleeker
Art Hasan
G. Warren Bleeker
Drew Wilson

*Attorneys for Plaintiff*
*FOSHAN LIYAN UNDERGARMENT CO., LTD.*

123771362.4