ART HASAN, CA Bar No. 167323
ahasan@lewisroca.com
G. WARREN BLEEKER, CA Bar No. 210834
wbleeker@lewisroca.com
DREW WILSON, CA Bar No. 283616
dwilson@lewisroca.com
LEWIS ROCA ROTHGERBER CHRISTIE LLP
655 N. Central Avenue, Suite 2300
Glendale, CA 91203-1445
Telephone: (626) 795-9900
Facsimile: (626) 577-8800

Hua Chen (SBN 241831)
Calvin Chai (SBN 253389)
ScienBiziP, P.C.
550 S. Hope Street, Suite 2825
Los Angeles, California 90071
Telephone: (213) 426-1771
Facsimile: (213) 426-1788
Email: huachen@scienbizippc.com;
Calvinchai@scienbizippc.com

*Attorneys for Plaintiff*
*FOSHAN LIYAN UNDERGARMENT CO., LTD.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

FOSHAN LIYAN UNDERGARMENT CO., LTD.,

Plaintiff,

v.

ROADGET BUSINESS PTE. LTD.,

Defendant.

Case No. 2:23-cv-06557-MRA-RAO

**PLAINTIFF'S OPPOSITION TO DEFENDANT ROADGET BUSINESS PTE. LTD.'S MOTION TO COMPEL ARBITRATION AND MOTION TO DISMISS PROCEEDINGS**

**Date: June 13, 2024**
**Time: 1:30 p.m.**
**Courtroom: 10B**

**The Hon. Mónica Ramírez Almadani**

# TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 2

III. ARGUMENT ..... 6

A. The Narrow Provision Fails to Encompass Liyan's Claims, Which Do Not Concern "Execution or Performance" of the OEM Agreement ..... 6

1. The Provision Roadget Chose Is Narrow and Inapplicable ..... 8

2. Liyan's Claims Do Not "Aris[e] From the Execution or Performance" of the OEM Agreement ..... 9

3. Liyan's Claims Are Similar to Claims Courts Routinely Reject as Outside of Scope of Arbitration Clauses ..... 13

4. Roadget Chose Permissive Language That Does Not Mandate Binding Arbitration ..... 16

B. Roadget has waived its alleged right to arbitrate Liyan's claims ..... 17

1. Roadget Knew of Its Alleged Existing Right to Arbitrate ..... 17

2. Roadget Has Acted Inconsistently with Its Alleged Right to Arbitrate ..... 18

C. Roadget's request to stay discovery should be denied ..... 19

**IV. CONCLUSION** ..... 21

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*AASI Creditor Liquidating Tr. v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, No. M 07-1827 SI, 2013 U.S. Dist. LEXIS 102307 (N.D. Cal. July 18, 2013) ........ 6, 12, 15

*Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011 (N.D. Cal. 2014) ........ 11

*Balen v. Holland Am. Line Inc.*, 583 F.3d 647 (9th Cir. 2009) ........ 6

*Best Sunshine Int'l, LTD Bvi v. Commonwealth Casino Comm'n*, No. 22-16630, 2023 U.S. App. LEXIS 16315 (9th Cir. June 28, 2023) ........ 16

*Cain v. Jpay, Inc.*, No. 2:21-cv-07401-FLA, 2022 U.S. Dist. LEXIS 109041 (C.D. Cal. Apr. 4, 2022) ........ 19

*Cape Flattery Ltd. v. Titan Maritime, LLC.*, 647 F.3d 914 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1862, 182 L. Ed. 2d 658 (2012) ........ 8

*Ceausu v. Progressive Cas. Ins. Co.*, 2013 U.S. Dist. LEXIS 201956 (C.D. Cal. Oct. 10, 2013) ........ 16

*Central Montana Rail v. BNSF Railway Company*, 285 F. App'x 458 (9th Cir. 2008) ........ 14

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000) ........ 6

*Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236 (S.D. Cal. 2000) ........ 6

*Clardy v. Gilmore*, 773 F. App'x 958 (9th Cir. 2019) ........ 19

*Coinbase v. Bielski*, 143 S. Ct. 1915 (2023) ........ 19, 20

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985)....................9

*DML Advisors, Inc. v. Wang*,
No. 222CV00856RFBBNW, 2022 WL 16823441 (D. Nev. Oct. 5, 2022)........20

*Fauceglia v. Univ. of S. California*,
No. CV194738FMOJEMX, 2021 WL 1783228 (C.D. Cal. Mar. 29, 2021).........8

*Ferrell v. Appfolio, Inc.*,
2024 U.S. Dist. LEXIS 4049 (C.D. Cal. Jan. 8, 2024)....................19

*Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*,
No. CV 12-2916 PSG, 2013 U.S. Dist. LEXIS 190701 (C.D. Cal. Dec. 13, 2013)
....................6

*Freeney v. Bank of Am. Corp.*,
No. CV 15-2376-JGB-PJWx, 2016 U.S. Dist. LEXIS 194371 (C.D. Cal. Aug. 4, 2016), judgment entered sub nom, *Freeney v. Bank of Am. [C]Orporation*, No. EDCV152376JGBPJWX, 2017 WL 382228 (C.D. Cal. Jan. 25, 2017)............18

*Galaxia Elecs. Co. v. Luxmax*,
No. LA CV16-05144 JAK (GJSx), 2017 U.S. Dist. LEXIS 232997 (C.D. Cal. Dec. 28, 2017)
....................19

*Granite Rock Co. v. Int'l Bhd. of Teamsters*,
561 U.S. 287 (2010)....................7

*Hill v. Xerox Bus. Servs., LLC*,
59 F.4th 457 (9th Cir. 2023)....................17

*Imperial Pac. Int'l (CNMI), LLC v. Commonwealth Casino Comm'n*,
144 S. Ct. 568, 217 L. Ed. 2d 303 (2024)....................16

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023)....................11

*Kelly v. Pub. Util. Dist. No. 2*,
552 F. App'x 663 (9th Cir. 2014)....................17

*Knutson v. Sirius XM Radio Inc.*,
771 F.3d 559 (9th Cir. 2014)....................6

*Kuklachev v. Gelfman*,
600 F. Supp. 2d 437 (E.D.N.Y. 2009) ............................................................ 15

*Lamps Plus, Inc. v. Verela*,
139 S. Ct. 1407 (2019) ................................................................................ 7, 9

*Leo Middle E. FZE v. Zhe Zhang*,
No. 21-cv-03985-CRB, 2021 U.S. Dist. LEXIS 251433 (N.D. Cal. Jan. 24, 2021) ........................................................................................................ 18

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
No. 5:16-cv-02805-EJD, 2017 U.S. Dist. LEXIS 117212 (N.D. Cal. Feb. 14, 2017) ........................................................................................................ 19

*Mesquite Lake Assoc. v. Lurgi Corp.*,
754 F. Supp. 161 (N.D. Cal. Jan. 2, 1991) ..................................................... 15

*Milliner v. Bock Evans Fin. Couns., Ltd.*,
114 F. Supp. 3d 871 (N.D. Cal. 2015) ............................................................. 7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
473 U.S. 614 (1985) ........................................................................................ 9

*Newirth by & through Newirth v. Aegis Senior Communities*,
LLC, 931 F.3d 935 (9th Cir. 2019) (abrogated on other grounds) ..................... 18

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ......................................................................... 6

*Patterson v. Jump Trading LLC*,
2024 WL 49055 (N.D. Cal. Jan. 4, 2024) ....................................................... 15

*Plintron Techs. USA, LLC v. Phillips*,
No. C24-93 MJP, 2024 U.S. Dist. LEXIS 65771 (W.D. Wash. Apr. 10, 2024) . 16

*Plows v. Rockwell Collins, Inc.*,
812 F. Supp. 2d 1063 (C.D. Cal. 2011) ........................................................... 17

*Roes v. SFBSC Mgmt., LLC*,
656 F. App'x 828 (9th Cir. 2016) ..................................................................... 6

*Rossi v. Motion Picture Ass'n of Am., Inc.*,
391 F.3d 1000 (9th Cir. 2004) ........................................................................ 11

*S. Cal. Underground Contractors, Inc. v. City of San Diego*,
108 Cal. App. 4th 533, 133 Cal. Rptr. 2d 527 (2003) ........................................10

*Salgado v. NYC Med. Prac., P.C.*,
No. 22-CV-06910 (LAK)(SN), 2022 U.S. Dist. LEXIS 232702
(S.D.N.Y. Dec. 28, 2022) .......................................................................15

*Scolari v. Elliot Rust Cos., LLC*,
No. C15-5163 BHS, 2015 U.S. Dist. LEXIS 71300 (W.D. Wash. June 2, 2015) 7

*Smith v. Spizzirri*,
No. 22-1218, 2024 WL 2193872 (U.S. May 16, 2024) ....................................15

*Sunvalley Solar, Inc. v. China Elec. Equipment Grp. Corp.*,
2015 WL 13546433 (C.D. Cal. Oct. 29, 2015)...................................................9

*Tracer Research Corp. v. Nat'l Env'l Servs. Co.*,
42 F.3d 1292 (9th Cir. 1994)..................................................................8, 13, 14

*United States v. Park Place Assocs., Ltd.*,
563 F.3d 907 (9th Cir. 2009)........................................................................17

*Van Ness Townhouses v. Mar Industries Corp.*,
862 F.2d 754 (9th Cir. 1988)........................................................................17

**FEDERAL STATUTES**

9 U.S.C. § 208 .......................................................................................6

**MISCELLANEOUS**

Black's Law Dictionary (6th ed. 1990) ...................................................9, 10

Black's Law Dictionary (11th ed. 2019) .........................................................9

Civil Code of China: Book III Contract (2020) at Article 498..................................9

Oxford English Dictionary (2024) ...................................................................16

# I. <u>INTRODUCTION</u>

Roadget Business Pte. Ltd.'s ("Roadget") motion attempts to rewrite the narrow arbitration provision ("Provision") in the parties' former agreement to cover claims the parties *never agreed to arbitrate*—asking this Court to rule contrary to controlling Ninth Circuit law. Roadget drafted the uniquely narrow arbitration language for the boilerplate agreement it imposed on Foshan Liyan Undergarment Co., Ltd. ("Liyan") and should be held to that language. The Provision allows arbitration of only disputes "arising from the execution or performance" of Roadget's OEM Procurement Framework Agreement ("OEM Agreement"), and Liyan's claims arise from neither of those things. The parties never agreed to arbitrate the claims at issue, and thus the Court should deny Roadget's motion.

Liyan's causes of action in this litigation arise from Roadget's false Digital Millenium Copyright Act ("DMCA") takedown notices directed at Liyan's products offered on the marketplace of non-party TEMU.com. *See* First Amended Complaint, ECF No. 21("FAC") ¶¶39-45. No element of Liyan's claims requires Liyan to show that Roadget failed to "execute or perform" the OEM Agreement or even relates to execution or performance.

Recently, in a case concerning similar misconduct by Roadget, the Guangzhou Intellectual Property Court (the "Chinese Court") refused to compel arbitration between the parties under the same Provision. Like here, the parties' performance under the OEM Agreement was not in dispute; rather, the case concerned Roadget's monopolistic activities. The Chinese Court ruled that Liyan's claims relating to Roadget's anticompetitive activity—including *sending the same false takedown notices over Liyan's photographs on Temu* (similar to the claims here)—were unrelated to the "execution or performance" of the OEM Agreement and thus not subject to arbitration. This Court should also hold that Liyan's claims fall outside the scope of the narrow Provision because they concern Roadget's post-OEM tortious conduct of sending false copyright takedown notices targeted at Liyan's product

listings on the third-party TEMU.com platform.

Roadget does not even argue that Liyan's claims relate to the "execution or performance" of OEM Agreement. Rather, Roadget argues the agreement "bear[s] directly" on "crucial" or "central" issues in this case. Roadget's Motion to Compel Arbitration and Motion to Dismiss Proceedings, ECF No. 39 ("MTC"), at 1:6, 8:5. That would not warrant arbitration under the Provision and is not true in any event. Only after Roadget claimed that it somehow did not know that it lacked ownership in the copyrights it was asserting in its sham DMCA notices did Liyan cite the OEM Agreement as one additional piece of evidence rebutting Roadget's argument. Specifically, the OEM Agreement contained no transfer of ownership to Roadget of the copyrights at issue in the false DMCA notices. And whether a contract term is relevant or even "central" to any issues in this case is of no moment. The only relevant inquiry under controlling Ninth Circuit case law is whether the parties consented to arbitrate claims over independent, tortious conduct that does not "aris[]e from the execution or performance" of their former OEM Agreement. They did not.

Finally, Roadget waived any right to invoke its narrow and inapplicable arbitration clause. As the drafter of the Provision in its boilerplate OEM Agreement, Roadget was aware of its terms yet chose to litigate Liyan's claims in this Court, filing two motions to dismiss the Complaint without any argument of jurisdictional defect or arbitration. ECF No. 18 and No. 28. Only now, when faced with the prospect of discovery into its systematic abuse of the DMCA, does Roadget seek to invoke the Provision in the parties' concluded OEM Agreement to impede and stall the proceedings in this Court. But Roadget's motion, including its request to stay discovery, should be denied as an improper delay tactic given its waiver of the right to belatedly try to force arbitration.

## II. STATEMENT OF FACTS

Liyan is a small clothing business that designs, manufactures, and sells women's undergarments. FAC at ¶10. Roadget is an ultra-fast-fashion behemoth

with a tight grip on ultra-fast-fashion suppliers (like Liyan) in China. In early 2022, Roadget and Liyan entered into a buyer-seller relationship for the sale of undergarments manufactured by Liyan. *Id.* at ¶11; Declaration of Liu Hongjiang ("Hongjiang Decl."), ¶2. Liyan commissioned[1] and paid a third-party photography agency to take pictures of some of its products ("Liyan's Commissioned Photographs"). FAC at ¶13; Hongjiang Decl., ¶8. Liyan also worked directly with the agency to produce the photographs, directing and providing feedback on the images. FAC at ¶13; Hongjiang Decl., ¶8. Liyan uploaded Liyan's Commissioned Photographs onto Roadget's platform and designated them as Liyan's photos. FAC at ¶14; Hongjiang Decl., ¶8.

Roadget stopped purchasing products from Liyan in December 2022, and the business relationship between Liyan and Roadget ended around the same time. FAC at ¶16; Hongjiang Decl., ¶9.

Liyan then started selling its undergarment products on the TEMU e-commerce platform under the store name "liyanbra" on or about January 2023 and used Liyan's Commissioned Photographs in its listings. FAC at ¶19; Hongjiang Decl., ¶10. In February 2023, Roadget started sending DMCA takedown notices to third-party TEMU.com, targeting Liyan's listings using Liyan's Commissioned Photographs. FAC at ¶¶20-23; Hongjiang Decl., ¶11.

In its multiple DMCA notices, Roadget falsely certified, under penalty of perjury, that it owned copyrights in Liyan's Commissioned Photographs and that Liyan's listings infringed those rights. FAC at ¶¶20-23. Roadget's false takedown notices required TEMU.com to disable multiple Liyan listings and caused damage to Liyan's business. FAC at ¶¶20-23; Hongjiang Decl., ¶12. Suffering substantial damages to its bottom line and reputational harm, Liyan had no choice but to bring its Section 512(f) claims against Roadget on August 11, 2023. FAC at ¶¶39-45;

[1] Contrary to the assertion in Roadget's Motion, Roadget did not commission the photos; it only recommended a photographer. FAC at ¶¶12-14.

Hongjiang Decl., ¶13.

On August 17, 2023, Liyan brought another action against Roadget and its U.S. affiliate, Shein US Services, LLC, in the Chinese Court for abuse of a dominant market position and unfair competition, by restricting Liyan from supplying to other platforms, and for falsely claiming Liyan's use of Liyan's Commissioned Photographs to sell its own products on other platforms was unauthorized (the "Chinese Proceeding"). *See* Hongjiang Decl., ¶14.

On January 5, 2024, Roadget objected to the Chinese Court's jurisdiction, arguing that the dispute was subject to an arbitration under the same Provision as here. *Id*. at ¶15. During the parties' business relationship, Roadget had presented Liyan with its boilerplate supplier agreement, which outlined the parties' respective performance obligations for the purchase and sale of Liyan's undergarment products, on a take-it-or-leave-it basis. *Id*. at ¶¶4-7. Liyan had no role in drafting the agreement and no choice but to sign the agreement if it wanted to do business with Roadget. *Id.* at ¶6. The boilerplate OEM Agreement makes *no* mention of copyright ownership in Liyan's Commissioned Photographs—and therefore it cannot be used by Roadget to support a claim of copyright ownership. The agreement also contains a narrow, permissive arbitration clause stating, "[a]ny dispute or controversy *arising from the execution or performance* of this Agreement shall first be resolved through negotiation between the parties. If the dispute cannot be resolved through negotiation, either party may submit the relevant dispute to the Guangzhou Arbitration Commission." ECF No. 32-3 (emphases added). At no point during, or after, the parties' business relationship did Roadget or Liyan raise any issue with respect to the other party's "execution or performance" of the long-terminated OEM Agreement.

The Chinese Court rejected Roadget's argument because, among other things, claims of monopolistic conduct and false copyright ownership in takedown notices did not arise out of the "execution or performance" of the OEM Agreement and

therefore were outside the scope of the arbitration clause. *See* Hongjiang Decl., ¶16, Exh. A.

The OEM Agreement does not form part of the allegations in this action in Liyan's Original Complaint, ECF No. 1, nor in Liyan's First Amended Complaint, ECF No. 21. In response to Liyan's claims, Roadget too did not raise the Provision, instead choosing to file two motions to dismiss. In both motions, Roadget addressed the merits of Liyan's claims, arguing that Roadget sent the false DMCA notices without subjective knowledge of their falsity. ECF No. 18 at 6; ECF No. 28 at 13-17. Roadget also argued for immunity against Liyan's state law claims under *Noerr-Pennington*. ECF No. 18 at 10-13. Lastly, Roadget argued that Liyan's claim seeking a declaratory judgment that Roadget has no copyright ownership in Liyan's Commissioned Photographs (despite Roadget's false claims, under penalty of perjury, in its DMCA notices) should be dismissed because Liyan failed to allege a justiciable case or controversy. ECF No. 28 at 17-20. Nowhere in either motion did Roadget mention the Provision or argue that Liyan's claims should go to arbitration.

On March 4, 2024, Liyan served Roadget with its first set of requests for production and first set of interrogatories. Faced with the prospect of discovery into its systematic abuses of the DMCA process, Roadget, on March 26, 2024, in an abrupt about-face, argued that this dispute was subject to arbitration.

Right before filing this Motion, Roadget stated it would seek a protective order from Magistrate Judge Oliver. Declaration of G. Warren Bleeker in Support of Liyan's Opposition to Roadget's Motion to Compel Arbitration ("Bleeker Decl."), ¶ 2. On March 28, 2024, Roadget agreed not to seek a protective order in exchange for Liyan's agreement to extend the deadline for Roadget's responses to Liyan's discovery requests until June 13, 2024, the date on which this Motion is set. *Id.*, ¶3.

## III. ARGUMENT

### A. The Narrow Provision Fails to Encompass Liyan's Claims, Which Do Not Concern "Execution or Performance" of the OEM Agreement

Roadget cites only the first element of the Ninth Circuit's two-part test for arbitrability, claiming it needs to prove only "the existence of an agreement to arbitrate by a preponderance of the evidence." *See* MTC at 7:9-12 (citing portion of *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)). But *Knutson* contains a second requirement, which Roadget ignores. Specifically, under the Federal Arbitration Act ("FAA"), "the basic role for courts is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement *encompasses the dispute at issue*."[2] *Knutson*, 771 F.3d at 564-65 (emphasis added); *see also Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014). Only where the response to both questions is affirmative may the court compel arbitration. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Roadget bears the burden of proving both elements. *Roes v. SFBSC Mgmt., LLC*, 656 F. App'x 828, 829 (9th Cir. 2016).

---

[2] Roadget states that under the New York Convention, the Court must only make a limited inquiry based on four preliminary factors to determine the existence of an arbitration agreement. MTC at 12. But the inquiry does not end there as arbitration agreements governed by the New York Convention are also governed by Chapter 1 of the FAA, and thus the Court must also analyze whether the arbitration clause covers the disputes at issue (which here it does not). 9 U.S.C. § 208; *see also AASI Creditor Liquidating Tr. v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.),* No. M 07-1827 SI, 2013 U.S. Dist. LEXIS 102307, at *66 (N.D. Cal. July 18, 2013). Although the Convention's aim may be for foreign arbitral awards to be recognized in the same way as domestic awards, the parties still must have agreed to arbitrate the specific issue in dispute. Indeed, the two cases relied on by Roadget are distinguishable because, unlike here, the disputes fell squarely within the arbitration clauses. *See Chloe Z Fishing Co. v. Odyssey Re (London) Ltd.*, 109 F. Supp. 2d 1236, 1254–57 (S.D. Cal. 2000) (court found scope of arbitration clauses in successive marine insurance policies, applicable to "any difference or dispute ... concerning any claim under the policy" and "any difference ... arising out of or in connection with" policy); *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 656 (9th Cir. 2009) (claims against employer for breach of contract and violations of the Seamen's Wage Act fell within scope of arbitration clause, which covered "any claims and disputes arising from this employment").

Significantly, Roadget's Motion is silent on the second prong. *See, e.g.*, MTC at 12-14. Having failed to address this issue in its opening Motion, Roadget has now waived the argument for purposes of its Reply. *See Forest Ambulatory Surgical Assocs., L.P. v. Ingenix, Inc.*, No. CV 12-2916 PSG (FFMx), 2013 U.S. Dist. LEXIS 190701, at *27 (C.D. Cal. Dec. 13, 2013) (parties "waive any argument raised for the first time in their Reply").

Further, Roadget's argument that there is a "strong federal policy in favor of arbitration" (MTC at 13) is relevant only if the parties have agreed to arbitrate their dispute—which they have not done here. *See Scolari v. Elliot Rust Cos., LLC*, No. C15-5163 BHS, 2015 U.S. Dist. LEXIS 71300, at *7 (W.D. Wash. June 2, 2015) ("Although the FAA establishes a strong presumption in favor of arbitration, that policy only comes into play after the Court determines that the parties have an enforceable arbitration clause."). The Supreme Court has held that "[a]rbitration is strictly a matter of consent and thus is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) (internal quotation marks omitted); *see also Lamps Plus, Inc. v. Verela*, 587 U.S. 176, 184 (2019) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)).

Courts may apply the "presumption favoring arbitration . . . *only* where it reflects, and derives its legitimacy from, a judicial conclusion that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute." *Granite Rock Co.*, 561 U.S. at 303 (emphasis added). An agreement to arbitrate waives the right to a jury trial; thus, it must be clearly and unmistakably given. *See Milliner v. Bock Evans Fin. Couns., Ltd.,* 114 F. Supp. 3d 871, 877 (N.D. Cal. 2015) (waiver of jury trial, in form of arbitration provision, was not "clear and unmistakable," as required under California law, thus rendering

arbitration provision unenforceable). Here, the Provision does not cover the dispute at issue.

### 1. The Provision Roadget Chose Is Narrow and Inapplicable

The Provision that Roadget chose is expressly narrow: it is limited to "[a]ny dispute or controversy *arising from the execution or performance of the Agreement*." Roadget's contractual restriction that arbitration is applicable only to disputes about the "execution or performance of the Agreement" ends the inquiry. But Roadget also reduced the scope of the parties' arbitration clause in several other ways, including by combining the "execution or performance" term with a narrow "arising" term, confirming Roadget's agreement was not meant to cover arbitration of statutory tort claims such as those at issue in this litigation.

In *Cape Flattery Ltd. v. Titan Maritime, LLC*., where the arbitration clause utilized the term "*arising under*"—similar to the parties' Agreement here—and excluded the broad "relating to" language, the Ninth Circuit had "no difficulty" finding that the parties "intended to cover a much narrower scope of disputes, *i.e.*, only those relating to the interpretation and *performance* of the *contract itself*." 647 F.3d 914, 922 (9th Cir. 2011), *cert. denied*, 132 S. Ct. 1862, 182 L. Ed. 2d 658 (2012) (emphasis added) (quoting *Mediterranean Enters. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983)). The Ninth Circuit cited its decision in *Tracer Research Corp. v. National Environmental Services Co.*, in which it held that the parties' use of the term "arising out of" indicated their intent to have an arbitration clause with a limited scope and concluded that the tort claim "constituted an independent wrong" and was thus "*not arbitrable*." *Id.* (emphasis added) (quoting *Tracer Rsch. Corp. v. Nat'l Env'l Servs. Co.*, 42 F.3d 1292, 1295 (9th Cir. 1994)). Here, the Provision is even narrower than in *Cape Flattery*, *Mediterranean Enterprises*, and *Tracer* as—in addition to limiting arbitration to disputes "arising from" (not broadly "relating to" the agreement)—arbitration is further confined to only disputes "arising from the *execution or performance* of the Agreement."

The Provision must be interpreted according to its terms,[3] and under controlling Ninth Circuit law it must not be stretched to cover anything else. Roadget's motion, however, ignores the actual arbitration clause it chose to use in its OEM Agreement, relying on inapplicable authorities evaluating broader arbitration clauses. None of the cases cited by Roadget involved arbitration clauses as narrow as the language here. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213 (1985) (MTC at 11) ("any controversy between you and the undersigned ***arising out of or relating to this contract*** or the breach thereof, shall be settled by arbitration") (emphasis added); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614 (1985) (MTC at 11) ("All disputes, controversies, or differences which may ***arise between [Mitsubishi] and [Soler] out of or in relation to Articles I-B through V of this Agreement*** or for the breach thereof, shall be finally settled by arbitration in Japan") (emphasis added); *see also Sunvalley Solar, Inc. v. China Elec. Equip. Grp. Corp.*, No. CV15-5099 PSG (JPRx) 2015 WL 13546433 (C.D. Cal. Oct. 29, 2015) (MTC at 15) ("***All disputes in connection with this Contract*** or the execution thereof").

**2. Liyan's Claims Do Not "Aris[e] From the Execution or Performance" of the OEM Agreement**

The dispute here does not arise from either the execution or performance of the OEM Agreement and is not covered by the narrow scope of the Provision. "Execution" means the "validation of a written instrument, such as a contract," including, for example, the signing of a contract. *See, e.g.*, Black's Law Dictionary

---

[3] If Roadget argues against the language it has chosen is subject to more than one interpretation, then "[u]nder California law, . . . 'the language of [the] contract should be interpreted most strongly against the party who caused the uncertainty to exist.'" *See Fauceglia v. Univ. of S. California*, No. CV 19-4738-FMO (JEMX), 2021 WL 1783228, at *5 (C.D. Cal. Mar. 29, 2021) (citing Cal. Civ. Code § 1654; *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1417 (2019) (California law "resolves the ambiguity [in a contract] against the drafter based on public policy factors[.]"). Similarly in China, an ambiguous contract should be construed against the drafter. Civil Code of China: Book III Contract (2020) at Article 498 ("Where there are two or more interpretations of a standard clause, the clause shall be interpreted in a manner unfavorable to the party providing the standard clause.").

(11th ed. 2019). No dispute exists regarding the formation of the OEM Agreement, nor could Roadget plausibly argue as much.

"Performance" means "[t]he fulfillment or accomplishment of a promise, contract, or other obligation according to its terms." Black's Law Dictionary (6th ed. 1990). Performance involves completing the duties and tasks that are settled upon in an agreement, including delivering goods, providing services, and making payments. Once the specified conditions and terms are met, a contract is considered performed. *S. Cal. Underground Contractors, Inc. v. City of San Diego*, 108 Cal. App. 4th 533, 553 (2003) ("'Performance' is defined as 'the execution of an action, ... something accomplished, ... the fulfillment of a claim, promise or request' (Webster's New Collegiate Dict., *supra*, at p. 873) and '[t]he fulfillment or accomplishment of a promise, contract, or other obligation according to its terms....' (Black's Law Dict., *supra*, at p. 1137))."

The OEM Agreement is a standardized contract between two parties in a buyer-seller relationship where one party manufactures a good for sale to the other party. *See* ECF No. 32-3. Roadget's own characterization of the OEM Agreement is that the parties "were formerly engaged in a buyer-seller relationship whereby Roadget purchased women's undergarments from Liyan to be sold on the above-noted SHEIN platform." MTC at 2:16-18. The "performance" here involved only the straightforward matter of Roadget's purchase of undergarments from Liyan under agreed-upon terms (*e.g.*, quality, volume, price, and time). Both parties fulfilled their contractual obligations, and upon the completion of their performance the contractual obligations of the parties concluded. As Roadget admits, the relationship terminated. ECF No. 18 at 8:3. Neither party has alleged a breach or failure to perform under the terms of the OEM Agreement in connection with any claims in this case.

Indeed, in its First Amended Complaint, Liyan does not ask the Court to enforce the Agreement. *See* FAC. And Liyan's claims are not based on an alleged failure by Roadget to "execute or perform" under the contract. *Id.* Nor does Liyan

seek any compensation for its own performance of the Agreement. *Id.*

Rather, Liyan's claims against Roadget are based on Roadget's independent, tortious extracontractual conduct—after performance under the OEM Agreement was completed—directed to a non-privity third-party platform to whom Roadget sent its false DMCA takedown notices. This conduct is unrelated to and is independent of the "performance" of a buyer-seller relationship for the manufacture and sale of undergarments on Roadget's platform. ***And neither Roadget's conducts, nor Liyan's claims require the existence of a contract between the parties.***

Indeed, none of the elements of Liyan's claims requires the Court to decide any issues arising from either the execution (i.e., validation or signing) or performance (fulfilling specific, identified buyer-seller obligations) of the OEM Agreement. The DMCA Section 512(f) claim "creates liability for individuals who abuse the takedown notice system by filing meritless claims of infringement." *Automattic Inc. v. Steiner*, 82 F. Supp. 3d 1011, 1017 (N.D. Cal. 2014). To meet the elements of the claim, Liyan will show that Roadget "knowingly and materially misrepresent[ed]" that it owns the copyrights in Liyan's Commissioned Photographs used in Liyan's listings on the third-party Temu platform; that the third party Temu "'relied' on such misrepresentations" by taking down the listings; and that Liyan has been "injured as a result." *Id.* at 1026; *see also Rossi v. Motion Picture Ass'n of Am., Inc.*, 391 F.3d 1000 (9th Cir. 2004). The related declaratory judgment claim on Shein's false assertion of copyright ownership also does not arise from executing the agreement or performing the obligations under the OEM Agreement. Indeed, the OEM Agreement is silent altogether on copyright *ownership* in Liyan's Commissioned Photographs, and its "performance" thus cannot relate to copyright ownership. Roadget's Motion fails to even attempt to argue how either claim arises from the execution or performance of the OEM Agreement. *See Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1102-04 (9th Cir. 2023) (affirming denial of motion to compel arbitration where Amazon was accused of spying on its Flex

drivers outside of working hours despite broad arbitration clause; "harm Jackson alleges 'is not measured by or dependent on the terms of' his work for Flex; rather, it involves Amazon's alleged breach of wiretapping statutes and invasion of privacy"; "Amazon's alleged misconduct existed independently of the contract and therefore fell outside the scope of the arbitration provision"). Here, too, Roadget's tortious conduct exists independent of the terms of the OEM Agreement. Nor could Liyan reasonably have intended or understood that, because it once had a standardized OEM Agreement with Roadget over delivery and sale of undergarments on Roadget's platform, it would later be roped into arbitration over independent tort claims concerning Roadget's false copyright takedowns targeting Liyan's listings on a third-party platform.

Roadget suggests that, by referencing the OEM Agreement in its Opposition to Roadget's Second Motion to Dismiss, Liyan implied that all issues, including those on which the OEM Agreement is silent, must be arbitrated. Not so. Roadget's rhetoric about whether the Agreement "bear[s]" upon those "crucial" or "central" issues is irrelevant. MTC at 1:6, 8:5; *see also AASI Creditor Liquidating Tr. V. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.*), No. M 07-1827 SI, 2013 U.S. Dist. LEXIS 102307, at *66 (N.D. Cal. July 18, 2013) (court held arbitration clause was too narrow to encompass antitrust claims despite defendant's argument that agreement involved pricing, a "central" issue in the antitrust case).

Nor is the OEM Agreement "crucial" to any claims. Liyan did *not* introduce the OEM Agreement to assert that the agreement's terms address ownership of the copyrights in Liyan's Commissioned Photographs. Nor could it because the Agreement is silent on copyright ownership in Liyan's Commissioned Photographs.[4]

---

[4] The OEM Agreement does not address the copyright ownership of photographs depicting the undergarments including Liyan's Commissioned Photographs. Part 2, section E, paragraph 5 of the OEM Agreement does discuss copyright ownership of particular styles of undergarments designed and manufactured by Liyan (for avoidance of doubt not to be confused with copyright ownership of photographs depicting the undergarments).

The Agreement also does not permit Roadget's use (as contrasted with ownership) of Liyan's Commissioned Photographs after the agreement ends and thus in no way touches on or relates to DMCA takedowns directed to listings on a third-party platform. And Roadget makes no attempt to argue as much.

The Agreement has no bearing on the claims here other than as an additional piece of evidence (and one of many) in response to an argument made by Roadget concerning the under-oath misrepresentations in its DMCA notices. In opposing Roadget's second motion to dismiss, Liyan detailed the overwhelming evidence that Roadget's false copyright ownership claims in the DMCA notices were knowingly made. Specifically, Roadget did not author Liyan's Commissioned Photographs and provided no evidence of its false ownership claims; Roadget's notices were signed by in-house counsel who specializes in IP; and Roadget routinely sends DMCA takedowns where it is aware suppliers or independent photographs (not Roadget) own copyrights. The OEM Agreement was referenced briefly to illustrate that it too could not have formed a colorable basis for the DMCA claims as it was silent on and did not confer copyrights in Liyan's Commissioned Photographs to Roadget. And Roadget, as its drafter, knew that. In sum, the OEM Agreement was just an additional document corroborating that Roadget's DMCA misrepresentations were knowing (not mere mistakes, as Roadget claims). But as evidenced by both the elements of Liyan's claims and Liyan's pleadings (which do not rely on the OEM Agreement), Liyan's claims proceed independently from the OEM Agreement. Indeed, Liyan could have brought this lawsuit over Roadget's false DMCA notices even if Liyan had not signed the OEM Agreement.

**3. Liyan's Claims Are Similar to Claims Courts Routinely Reject as Outside of Scope of Arbitration Clauses**

Similar attempts to rewrite narrow arbitration provisions to encompass any dispute touching on the parties' contract have been routinely rejected by courts. As discussed above, the Ninth Circuit's decision in *Tracer Rsch. Corp. v. Nat'l Env't*

*Servs. Co*. is instructive. 42 F.3d 1292. In *Tracer*, the plaintiff had licensed a chemical process to the defendant, and a dispute arose after the licensing agreement terminated because the defendant continued to use the plaintiff's trade secrets and confidential information. *Id.* at 1293. The license agreement contained an arbitration clause that stated "[i]n the event any controversy or claim *arising out* of this Agreement cannot be settled by the parties, such controversy or claim *shall* be settled by arbitration." *Id.* at 1295 (emphasis added). Even though the scope of the arbitration clause in *Tracer* was wider than the clause here, the Ninth Circuit held that the former licensor's misappropriation of trade secrets claim against its former licensee was not arbitrable. The terminated license agreement provided for arbitration of claims "arising out of" the agreement, but the misappropriation claim was a tort claim that alleged misconduct independent from any breach of the licensing and nondisclosure agreements. *Id.* *Tracer* instructs that tortious conduct after the completion of performance of a contract cannot be deemed as "arising out" of the contract. Liyan's claims too arise out of Roadget's independent, tortious conduct directed to Liyan's listings on a third-party platform that caused harm to Liyan after the parties fully performed under the OEM Agreement.

In *Central Montana Rail v. BNSF Railway Company*, a tort claim implicated an unrelated third party and was found to be outside the scope of an arbitration agreement. 285 F. App'x 458, 460-61 (9th Cir. 2008). The parties entered into an agreement to "facilitate the interchange of cars" between them, and the agreement included an arbitration provision. *Id.* at 459. Separately, the defendant entered into an agreement to do business with a third party. *Id.* at 460. The plaintiff brought breach of contract and tort claims against the defendant in connection with the defendant's competitive relationship with the third party. *Id.* The court found that the arbitration agreement between the parties, which had as its sole subject the interchange of cars between the parties and the logistics of interchange, did not reach any of the claims brought by plaintiff. *Id.* The court noted that the claims did not arise out of, nor were

they connected with, the agreement; rather the alleged conduct arose out of defendant's relationship with an unrelated third party—similar to Roadget's tortious DMCA notices against Liyan's listings on a third-party website. *Id.*[5] *See also Kuklachev v. Gelfman*, 600 F. Supp. 2d 437, 467 (E.D.N.Y. 2009) (copyright infringement claim, where defendant utilized plaintiff's promotional materials, including photographs, was not covered by arbitration clause in prior performance agreement between parties where agreement stated that plaintiff would provide defendant with photographs for the purpose of advertising a show but nothing in the prior agreement pertained to assignment of copyrights); *Salgado v. NYC Med. Prac., P.C.*, No. 22-CV-06910 (LAK)(SN), 2022 U.S. Dist. LEXIS 232702, at *10 (S.D.N.Y. Dec. 28, 2022) (DMCA claim regarding doctor's use of images from patient's surgery on social media was not covered by arbitration clause in parties' prior surgery agreement, which focused on surgery procedure and did not cover use of plaintiff's photographs).[6]

Indeed, the Chinese Court, faced with a similar demand for arbitration by Roadget, found that the dispute between Roadget and Liyan over anticompetitive conduct and false copyright takedown notices did not fall within the arbitration clause in the OEM Agreement. Hongjiang Decl., ¶16; Exh. A.

---

[5] Roadget asserts that Liyan "concedes" that the copyright ownership issues are "governed by Chinese law" and cites to *Unicolors* for the proposition that "foreign law governs copyright ownership over foreign works." *See* MTC at 14-15 (*citing Unicolors, Inc. v. H&M Hennes & Mauritz, LP*, 52 F.4th 1054 (9th Cir. 2022)). Liyan makes no such concession and whether foreign law governs copyright ownership over foreign works is not resolved by the *Unicolors*. *Unicolors*, F.4th 1054 at 1081 (court concluded "without assessing whether the district court erred in its analysis of Chinese law or its application of U.S. copyright law's presumption of validity to foreign copyright registrations under the Berne Convention".)

[6] *AASI Creditor Liquidating Tr. v. AU Optronics Corp. (In re TFT-LCD (Flat Panel) Antitrust Litig.)*, No. M 07-1827 SI, 2013 U.S. Dist. LEXIS 102307, at *66 (N.D. Cal. July 18, 2013) (denying motion to compel arbitration because the parties' arbitration agreement that covered disputes regarding "the terms of this Agreement" was too narrow to encompass pricing disputes t); *Patterson v. Jump Trading LLC*, 2024 WL 49055, at *10 (N.D. Cal. Jan. 4, 2024); *Mesquite Lake Assoc. v. Lurgi Corp.*, 754 F. Supp. 161, 162 (N.D. Cal. Jan. 2, 1991) (denying motions to compel arbitration and stay discovery where narrow arbitration clause did not require the parties to arbitrate dispute concerning breach of contract and tort claims).

Finally, even if Liyan's claims were subject to arbitration (they are not), the Supreme Court held that dismissal is improper. *Smith v. Spizzirri*, Case No. 22-1218, 2024 WL 2193872, at *3-4 (U.S. May 16, 2024) (courts do not have discretion to dismiss a suit where claims are subject to arbitration; rather, the FAA compels the court to stay proceeding).

**4. Roadget Chose Permissive Language That Does Not Mandate Binding Arbitration**

Contrary to Roadget's claims that the Provision is "mandatory" (MTC at 5, 7), Roadget chose to use narrow, permissive language when drafting the Provision, which allows, but does not require, arbitration. Specifically, Roadget used the mandatory "shall" five times in the Provision; but opted to use the permissive "may" on the critical provision—"[i]f the dispute cannot be resolved through negotiation, either party *may* submit the relevant dispute to the Guangzhou Arbitration Commission." ECF 32-3 at §I. (emphasis added).

"The Ninth Circuit routinely holds that the plain meaning of the term 'may' connotes discretion or permissiveness, in contrast to 'shall,' the contraposition of the term, which connotes a requirement or duty." *Ceausu v. Progressive Cas. Ins. Co.*, No. CV 12-6254 PSG (VBKx), 2013 U.S. Dist. LEXIS 201956, at *19-20 (C.D. Cal. Oct. 10, 2013). Thus, the Court should interpret the Provision using the ordinary meaning of "may," which indicates permission or possibility, not requirement. Oxford English Dictionary (2024) ("may" is a modal verb that is "used to say that something is possible.")

Roadget, as the drafter of the Provision and a sophisticated party with extensive experience in drafting contracts, chose to use mandatory "shall" language both before and after the one instance of "may," thereby highlighting its intentional choice to render the Provision permissive, not mandatory. *See Best Sunshine Int'l, LTD Bvi v. Commonwealth Casino Comm'n*, No. 22-16630, 2023 U.S. App. LEXIS 16315, at *2 (9th Cir. June 28, 2023), *cert. denied sub nom; Imperial Pac. Int'l*

*(CNMI), LLC v. Commonwealth Casino Comm'n,* 144 S. Ct. 568 (2024) (use of "may" to describe availability of arbitration is notable when compared to other dispute-resolution clauses that use terms like "shall" or "must" to require parties to perform other obligations)*; Plintron Techs. USA, LLC v. Phillips,* No. C24-93 MJP, 2024 U.S. Dist. LEXIS 65771, at *7 (W.D. Wash. Apr. 10, 2024) (denying motion to compel arbitration where broad clause to arbitrate all types of disputes stated that "Employer and Executive agree to first mediate and may then submit to binding arbitration"; "finding 'may' modifies and makes permissive the parties' ability to 'submit to binding arbitration'").[7] As the drafter, Roadget cannot meet its high burden to prove the parties agreed to broad, mandatory, arbitration where it purposefully chose a very narrow and permissive clause.

### B. Roadget has waived its alleged right to arbitrate Liyan's claims

The Ninth Circuit has long held that the right to arbitration, like other contractual rights, can be waived. *U.S. v. Park Place Assocs., Ltd.*, 563 F.3d 907, 921 (9th Cir. 2009). Roadget, as drafter of the arbitration clause is legally deemed to have known of its alleged right to compel arbitration, but deliberately acted inconsistently with its asserted right to arbitrate. *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023) ("The test for the waiver of right to compel arbitration consists of two elements: (1) knowledge of existing right to compel arbitration; and (2) intentional acts inconsistent with that existing right.")

#### 1. Roadget Knew of Its Alleged Existing Right to Arbitrate

As the drafter of the Provision, "[k]knowledge of [its] contractual right to arbitrate is imputed to [Roadget]." *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1066-67 (C.D. Cal. 2011). Roadget cannot, as a matter of law, deny its knowledge of the existence of the Provision that it now claims applies to the disputes in this case. Further, Roadget sought to compel arbitration in the Chinese Proceeding on January 5, 2024, some three months before it filed its Motion. Hongjiang Decl.,

¶15. Any assertions by Roadget that it "forgot" about the Provision until Liyan referenced the OEM Agreement months into this litigation lacks credulity.

### 2. Roadget Has Acted Inconsistently with Its Alleged Right to Arbitrate

"A party that is aware that it has a right to compel arbitration of a dispute cannot wait to exercise that right until the parties have expended a significant amount of time and money to litigate that dispute in federal court." *Kelly v. Pub. Util. Dist. No. 2*, 552 F. App'x 663, 664 (9th Cir. 2014); *see also Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756, 759 (9th Cir. 1988) (defendant acted inconsistently with its known arbitration right when it refrained from filing motion to compel arbitration and filed Rule 12(b)(6) motion to dismiss); *Newirth by & through Newirth v. Aegis Senior Cmtys.,* LLC, 931 F.3d 935, 941 (9th Cir. 2019) (abrogated on other grounds) ("[A] party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court."). Roadget filed two motions to dismiss Liyan's claims in this litigation—at the same time it was seeking arbitration in China. If these claims were arbitrable as Roadget asserts, these motions gave Roadget a procedural avenue by which to challenge the alleged jurisdictional defect and invoking the terms of the Provision, but Roadget deliberately chose not to do so. In both its First and Second Motions to Dismiss, Roadget actively argued the merits of this case, contesting Liyan's pleadings with respect to Roadget's subjective knowledge of the falsity of its DMCA notices. ECF No. 18 at 6; ECF No. 25 at 13-17. Roadget also affirmatively argued immunity under the *Noerr-Pennington* doctrine. ECF No. 18 at 10-11. After Liyan amended the complaint, Roadget further argued that Liyan's claim for declaratory judgment that Roadget has no copyright ownership in Liyan's Commissioned Photographs should be dismissed because it fails to allege a judiciable case or controversy. ECF No. 25 at 17-20.

Roadget's actions have been inconsistent with its alleged right to arbitrate Liyan's claims. *See Leo Middle E. FZE v. Zhe Zhang,* No. 21-cv-03985-CRB, 2021 U.S. Dist. LEXIS 251433, at *12 (N.D. Cal. Jan. 24, 2021) (plaintiff acted inconsistently where motion to dismiss did not contain any jurisdictional arguments or request to move to arbitration); *Freeney v. Bank of Am. Corp.,* No. CV 15-2376-JGB-PJWx, 2016 U.S. Dist. LEXIS 194371, at *16 (C.D. Cal. Aug. 4, 2016), judgment entered sub nom, *Freeney v. Bank of Am. Corp.*, No. CV 15-2376-JGB-PJWx, 2017 WL 382228 (C.D. Cal. Aug. 4, 2016) (defendant who sought to dismiss second amended complaint acted inconsistently with right to arbitrate). Roadget has waived its alleged right to arbitrate.

**C. <u>Roadget's request to stay discovery should be denied</u>**

On March 28, 2024, Roadget agreed not to seek a stay of discovery before the Magistrate Judge in exchange for Liyan's agreement that the deadline for Roadget's discovery responses would be extended until June 13, 2024, the date set for hearing this Motion. Thus, Roadget's request to stay discovery during the pendency of this Motion appears moot. Nonetheless, the Court should deny Roadget's request.

A party seeking a stay of discovery carries a "heavy burden to make a strong showing that a stay is warranted." *Cain v. Jpay, Inc.,* No. 2:21-cv-07401-FLA (AGRx), 2022 U.S. Dist. LEXIS 109041, at *4-5 (C.D. Cal. Apr. 4, 2022) (denying motion to stay pending motion to compel arbitration).[8] Simply arguing that a stay is routine is not a justification to stay discovery. *See Ferrell v. Appfolio, Inc.*, No. SA

---

[8] Defendant's argument that courts routinely stay proceedings pending the resolution of a motion to compel is inaccurate and relies on cases that are distinguishable. *See e.g., Clardy v. Gilmore*, 773 F. App'x 958, 959 (9th Cir. 2019) (plaintiff failed to show that further discovery might yield relevant evidence at summary judgment stage); *Coinbase v. Bielski*, 143 S. Ct. 1915, 1920 (2023) (case stayed where interlocutory appeal regarding arbitration pending); *Galaxia Elecs. Co. v. Luxmax,* No. LA CV16-05144 JAK (GJSx), 2017 U.S. Dist. LEXIS 232997, at *5 (C.D. Cal. Dec. 28, 2017) (parties jointly agreed to stay, and court noted that it is not routine practice to stay discovery); *Mahamedi IP Law, LLP v. Paradice & Li, LLP,* No. 5:16-cv-02805-EJD, 2017 U.S. Dist. LEXIS 117212, at *4 (N.D. Cal. Feb. 14, 2017) (partial stay where depositions and document requests were still permitted during stay.)

CV 23-01353-JWH (DFMx), 2024 U.S. Dist. LEXIS 4049, at *1 (C.D. Cal. Jan. 8, 2024) (explaining that although court has broad discretion to stay discovery, "the Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending," and "district courts look unfavorably upon such blanket stays of discovery"). Indeed, Liyan has expended significant resources in litigating the case to date (including by responding to multiple motions to dismiss and serving discovery) and would be prejudiced by the delay a blanket stay would cause.

Where the grounds for a motion to compel arbitration are weak, courts routinely deny motions to stay discovery. As the Supreme Court has pointed out, halting discovery in federal district court is itself inefficient. *See Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1930 (2023) (Jackson, J., dissenting).

The court should take a "preliminary peek" at Roadget's motion to compel arbitration and stay discovery only if Liyan would be unable to proceed with its claim in federal court. *See, e.g., DML Advisors, Inc. v. Wang*, No. 2:22-CV-00856-RFB-BNW, 2022 WL 16823441, at *1 (D. Nev. Oct. 5, 2022) (after a "preliminary peek," court was not convinced plaintiffs' claim would be subject to arbitration terms of agreement and denied request to stay).

As discussed above, here, no colorable argument exists that Liyan's DMCA-related claims "arose" from the "execution or performance" of the OEM Agreement. This case relates to Roadget's independent, tortious action of sending false DMCA notices targeting Liyan's listings on a third-party platform long after the performance of the supplier-buyer relationship between Roadget and Liyan concluded. This Court should deny Roadget's request to stay because it is a delay tactic based on a motion that lacks merit.

## IV. CONCLUSION

For the reasons stated above, Roadget's Motion should be denied.

Dated: May 23, 2024

By: /s/ G. Warren Bleeker

Art Hasan
G. Warren Bleeker
Drew Wilson

Attorneys for *Plaintiff Foshan Liyan Undergarment Co. Ltd.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Foshan Liyan Undergarment Co. Ltd. certifies that this brief contains 6,981 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 23, 2024

G. Warren Bleeker