```
 1                      UNITED STATES DISTRICT COURT
                       CENTRAL DISTRICT OF CALIFORNIA
 2                     WESTERN DIVISION - LOS ANGELES

 3

 4   FOSHAN LIYAN UNDERGARMENT    ) Case No. CV 23-6557-MRA (RAOx)
     CO., LTD.,                   )
 5                                ) Los Angeles, California
          Plaintiff,              ) Thursday, June 13, 2024
 6                                ) 1:34 P.M. to 2:00 P.M.
             v.                   )
 7                                )
     ROADGET BUSINESS PTE. LTD.,  )
 8                                )
          Defendant.              )
 9   _____)

10

11

12

13                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE MONICA RAMIREZ ALMADANI
14                    UNITED STATES DISTRICT JUDGE

15

16   Appearances:                  See Page 2

17   Deputy Clerk:                 Gabriela Garcia

18   Court Reporter:               Recorded; CourtSmart

19   Transcription Service:        JAMS Certified Transcription
                                   16000 Ventura Boulevard #1010
20                                 Encino, California  91436
                                   (661) 609-4528
21

22

23

24
     Proceedings recorded by electronic sound recording;
25   transcript produced by transcription service.
```

```
 1  APPEARANCES:
 2
 3  For the Plaintiff:      Quinn Emanuel Urquhart and Sullivan
                            LLP
 4                          By:  MICHAEL E. WILLIAMS
                                 KAYLA M. ROONEY
 5                          865 South Figueroa Street, 10th Floor
                            Los Angeles, California  90017
 6                          (213) 443-3000
                            michaelwilliams@quinnemanuel.com
 7                          kaylarooney@quinnemanuel.com

 8
    For the Defendant:      Lewis Roca Rothgerber Christie LLP
 9                          By:  SYED A. HASAN
                                 G. WARREN BLEEKER
10                               STEVEN ANDREW WILSON
                            655 North Central Avenue, Suite 2300
11                          Glendale, California  91203-1445
                            (626) 795-9900
12                          ahasan@lewisroca.com
                            wbleeker@lewisroca.com
13                          dwilson@lewisroca.com
14
15
16
17
18
19
20
21
22
23
24
25
```

1     LOS ANGELES, CALIFORNIA, THURSDAY, JUNE 13, 2024, 1:34 P.M.

2              THE COURT:  Good afternoon.  You may be seated.

3              THE CLERK:  Calling item No. 1, CV 23-6557-MRA,

4     *Foshan Liyan Undergarment Co., Ltd. v. Roadget Business Pte.*

5     *Ltd.*

6              Counsel, please state your appearances starting

7     with the plaintiffs.

8              SYED A. HASAN:  Art Hasan, Your Honor,

9     Warren Bleeker, and Drew Wilson from the law firm of

10    Lewis Roca.

11             THE COURT:  Good afternoon.

12             MICHAEL E. WILLIAMS:  Good afternoon, Your Honor.

13    Michael Williams from Quinn Emanuel on behalf of Defendant

14    Roadget.

15             KAYLA M. ROONEY:  Good afternoon, Your Honor.

16    Kayla Rooney on behalf of Defendant Roadget.

17             THE COURT:  Good afternoon.

18             So we have two motions before the Court, the motion

19    to dismiss and strike specific allegations from the

20    First Amended Complaint, and then the motion to compel

21    arbitration, and I'd like to start with the second motion and

22    specifically with defense counsel.

23             I am not convinced that the agreement -- that the

24    arbitration clause applies here, and so I wanted to -- I want

25    you to help me understand why you think it does.

1          MR. WILLIAMS:  Happy to do so, Your Honor.
2          So, Your Honor, the arbitration provision talks
3   about disputes arising from the execution or performance of
4   the agreement, and if you look starting back at the initial
5   Complaint filed by the plaintiff here, what the plaintiff
6   alleges -- and starting in paragraph 10 -- is that Roadget
7   and Liyan entered into this buyer-seller relationship, which
8   they acknowledge was formed based upon this particular
9   agreement.  They go on to allege, then, that as part of this
10  relationship -- so my client, Roadget, also operates -- it
11  goes by the company name -- or the brand name "Shein," and so
12  they operate Shein.com and the Shein website.
13         And so Roadget had entered into agreement with
14  Liyan to design certain products and, as part of that, would
15  be sold on Shein's website, and as part of that, they were
16  directed, according to their allegations, by Roadget to take
17  -- have photos taken of models wearing the undergarments so
18  that they can be put up on the Shein website and sold by
19  Shein.  Roadget, according to the Complaint, directed Liyan
20  to work with a particular photographer -- and they've made
21  some changes in the amended Complaint but essentially to
22  bring in a photographer for this.
23         The copyrights at issue -- the photographs at issue
24  were created as a result of the parties' performance under
25  the agreement.  Because of the fact of the nature of the

1  relationship, this was all part of the parties' performance
2  under the agreement.  Now, what Liyan has done here is
3  they've now filed the lawsuit saying, "Well, you sent false
4  takedown notices under the DMCA related to these particular
5  photographs that were taken as part of the parties'
6  relationship."  And in opposition to the motion to dismiss,
7  Liyan came in and submitted the actual agreement and said,
8  "Wait a minute.  We believe the agreement will detail that
9  Roadget did not own the copyrights at issue and Liyan has the
10 continuing right to use the photographs on their website,"
11 which is what prompted the motion to compel arbitration.  So
12 that was an admission --
13            THE COURT:  Let me ask you to pause for a second.
14            Why didn't you raise the arbitration issue in the
15 motion to dismiss?
16            MR. WILLIAMS:  Frankly, Your Honor, that was an
17 oversight by counsel.  We -- the agreement we had was -- it's
18 -- was in Mandarin.  We did not have it translated by that
19 point in time.  We know that --
20            THE COURT:  But you were aware that there was an
21 agreement?
22            MR. WILLIAMS:  I was not, Your -- we were aware
23 there was an agreement.  And I will acknowledge, Your Honor,
24 that the client was aware.  I'm not trying to disclaim the
25 client's unawareness because they drafted the agreement, and

1  so we agree on those particular points.  We can talk about
2  whether or not that constitutes waiver or not.  We don't
3  think it does.
4           But when plaintiff raised this issue in opposition
5  to the motion to compel, and particularly that they're going
6  to be relying on the agreement to prove the elements of their
7  claim -- namely, that Roadget did not own the copyrights and
8  that they had a continuing right to use them after the
9  relationship ended -- and they submitted the agreement as
10 part of that, we promptly -- you know, at that point we
11 promptly moved to compel.
12          THE COURT:  But as I understand their argument,
13 they submitted the agreement to show knowledge, that the
14 defendant here had the knowledge that there was an agreement,
15 that photographs were taken as part of that.  But the
16 language of the agreement itself, if you look specifically at
17 the arbitration clause, it doesn't speak to the -- who owns
18 the copyright for the commissioned photographs, for example.
19 There's no -- the -- it's very short in terms of that --
20 there's no explanation of that.  So can you help me
21 understand where in the agreement it's -- where -- how is it
22 clear that arbitration here in this particular matter given
23 the tortious conduct that they're alleging that this
24 agreement would apply?
25          MR. WILLIAMS:  Sure.  So -- and we will

1  acknowledge, Your Honor, that the agreement itself does not
2  get into the level -- it talks generally about certain
3  copyright ownership, but the issue is --
4              THE COURT:  But isn't that the garment?  Isn't it
5  about the copyright over --
6              MR. WILLIAMS:  The --
7              THE COURT:  -- the design of the garments?
8              MR. WILLIAMS:  The design of the product.  Correct.
9              And what -- but the issue isn't is there a
10 violation of the particular contract?  The question is do the
11 -- does the dispute arise from the performance of the
12 agreement?  And for the performance of the agreement, as part
13 of the agreement, these photographs were taken and the
14 copyrights were created -- as part of the performance of the
15 agreement.  The ownership to those copyrights is directly at
16 the heart of this dispute, and I don't think Liyan disputes
17 that.  They actually acknowledge that in their motion to
18 dismiss, that the issues will relate to the ownership of the
19 copyrights.  Because before you even get to the knowledge
20 issue, you have to determine copyright ownership, and they
21 have a declaratory judgment claim for the ownership of the
22 copyright.
23             So we believe, looking at the agreement and the
24 question of did the -- did this dispute arise from
25 performance of the contract? it did.  This is not a situation

1  -- some of the cases they cited where it was wholly
2  independent tortious agreement.  Here, you can't get away
3  from the parties prior business relationship to determine
4  this issue.  So therefore we believe it does squarely fall
5  within the scope of the performance of the agreement, and we
6  think that given the U.S. Supreme Court federal mandate to
7  -- basically a presumption towards arbitration unless there
8  is a clear determination that it cannot fall within -- that's
9  the *Dean Witter* case that the U.S. Supreme Court made clear
10  -- we think that the presumption should go in favor of the
11  arbitration clause here.  And --
12              THE COURT:  Do you agree that the agreement ended
13  before the alleged wrongdoing here?
14              MR. WILLIAMS:  Yes.  We do not -- I mean, the
15  agreement ended, and that's sort of what prompted the issue
16  is they were selling -- using the same photographs that were
17  being used on Shein's website on Temu's website.  But as we
18  cited cases in our reply, that -- that's not controlling.
19  There are obligations that could still arise as a result of
20  it.  This is not a situation where the alleged tortious
21  conduct was wholly separate and apart from the parties'
22  business relationship.  It's all part and parcel of the
23  performance.  If -- you know, it would be one thing if this
24  was a stranger who was using Roadget's copyrighted images on
25  a website that had nothing to do with the underlying business

1    transaction.

2               And frankly, Your Honor, in terms of judicial
3    efficiency, as Liyan mentions in their papers, the parties
4    are already litigating over the same issue in China,
5    including this issue of whether or not there were false
6    takedown notices.  So there's no question about whether or
7    not these claims could be adjudicated in China, as the
8    parties agreed.  We've got two foreign entities, a Chinese
9    entity and a Singaporean entity, that are using federal
10   courts here when there's an arbitration agreement.

11              THE COURT:  I'm not sure what the legal import of
12   that is, but I am confused as to these two separate
13   proceedings and whether they concern the same issues.  They
14   --

15              MR. WILLIAMS:  The -- my understanding is the --
16   there is litigation going on in China that's broader.  It's
17   an antitrust claim brought by Liyan against Roadget, but as
18   part of those allegations, they are alleging that there were
19   false takedown notices sent.  So that case is broader, and as
20   we -- or we submitted in our papers, we don't think the
21   rulings by the Chinese court have any bearing on this Court's
22   analysis or determination, but the issue of false takedown
23   notices are being litigated in China as we speak.

24              THE COURT:  Understood.  Okay.  Thank you.

25              Let me hear from plaintiff's counsel on the

1  arbitration issue, and then we'll turn to the motion to
2  dismiss.
3              MR. HASAN:  Good afternoon, Your Honor.
4              THE COURT:  Good afternoon.
5              MR. HASAN:  Art Hasan from Lewis Roca.
6              The crux of the argument, as I understand it from
7  my esteemed colleague Mr. Williams for Roadget, is that these
8  photos wouldn't have occurred "but for" the agreement, but
9  the law is very clear.  The issue of whether some event or
10 some issue would have occurred "but for" is not the same as
11 whether a dispute or a claim arises under the arbitration
12 clause of that agreement, and that is a very important
13 distinction over here that goes to that argument.
14             We cited, for example, the Ninth Circuit case of
15 *Jackson v. Amazon.com* in our brief.  In that case it affirmed
16 a denial of motion to compel where arbitration -- where
17 Amazon was spying on its -- allegedly spying on its flex
18 drivers afterhours.  The agreement and the arbitration clause
19 only talked about performance during employment hours.  And
20 so the issue of invasion of privacy, wiretapping that
21 occurred afterward, even though that spying -- or what have
22 you -- wouldn't have occurred "but for" the existence of the
23 agreement did not subject it to arbitration.
24             THE COURT:  You do recognize, though, that the
25 agreement talks about images -- creating -- having the

1   photographs?  (Reading) Despite the above agreement, Party A
2   shall have the right to use the product images provided by
3   Party B to Party A, including, but not limited to, the right
4   to display and use them on its sales platform.
5            MR. HASAN:  Yes.  And the claims in this case don't
6   concern that.  Because what happened over here in our 512(f)
7   claim, Your Honor, is that after the termination of this
8   agreement, which terminated in or about December 2022, then
9   later in the spring -- or in February and beyond, our client
10  used the images on the Temu U.S. site, which is a competing
11  platform.  That is when Shein and Roadget sent the false
12  takedown notices to Temu.  So it occurred afterward.  It
13  couldn't have --
14           THE COURT:  But why did not arise from the scope of
15  the agreement?
16           MR. HASAN:  Because the dispute here focuses on a
17  third -- a tort claim that involves a third party that is
18  nowhere set forth in this agreement.  The performance ended
19  -- of that contract -- in December 2022.  We are not
20  claiming, based on the clause that you read, that Roadget is
21  breaching the contract by continuing to use the images on its
22  website.  That is not an aspect of this case.  This case and
23  this dispute has to do with the fact that they sent false
24  takedown notices after the agreement terminated.
25           THE COURT:  Could they continue to use the images

1    at this point even though the agreement -- the business
2    relationship has ended?
3              MR. HASAN:  Well, it's a separate issue,
4    Your Honor.  Possibly not.  I don't want to -- but, you know,
5    that agreement terminated, and I don't believe we looked at
6    it that there are any survivorship clauses in there.  So it
7    doesn't continue after this.  It just ended.  It ended.
8              And the question that was raised -- that you
9    brought up is exactly right, and it's stated in Roadget's
10   opening brief.  The reason why we cited this agreement is
11   another piece of evidence to show that they can't deny that
12   these were, you know, false notices.  They can't deny
13   knowledge of these notices and that they didn't own it.  So
14   -- and the reason why is the opposite.  It's really because
15   the agreement doesn't touch upon ownership.  So they can't
16   rely upon that.  But they know that there was some type of
17   in-the-past relationship between the parties.  So it has to
18   do with intent.
19             THE COURT:  I understand that.
20             Let me turn to the motion to dismiss, actually,
21   because I think -- it's really not clear to me what your
22   position is as to ownership of the copyright here.  Your
23   position seems to be somewhat equivocal, and I'm wondering
24   how your claims survive if you haven't alleged, at least as
25   far as I've seen, that your client is in fact the owner here.

1               MR. HASAN:  Our client does not have to be the
2  owner of the copyrights in order for the takedown notices
3  that Roadget sent under DMCA to be false.  The photographer
4  could own it.  The point is and the crux of our claim is that
5  they don't own it.  And the reason why this comes up is
6  because under 512(f) of the DMCA, there has to be a knowing
7  misrepresentation.  We're saying the knowing
8  misrepresentation that was made by Shein -- by Roadget -- is
9  that they own these copyrights and the images; so therefore
10 this third-party Temu "take it down," which is exactly what
11 happened over and over again.
12              THE COURT:  Okay.  You're saying they're not the
13 owner, you're --
14              MR. HASAN:  That's it.
15              THE COURT:  -- you're not sure if you are the
16 owner, but you've been harmed here because --
17              MR. HASAN:  We're --
18              THE COURT:  -- you might be the owner?
19              MR. HASAN:  No.  We're harmed here because under
20 Section 512(f), which is the statute that we're looking at
21 over here, is some -- we were harmed by the fact that our
22 listings were taken off of Temu.  That's how we were harmed.
23 And the vehicle for doing that were the false takedown
24 notices.  So under 512(f) --
25              THE COURT:  But if the ownership is not clear, how

1   does that show that Roadget had -- you know, that they
2   knowingly misrepresented their ownership rights?
3          MR. HASAN:  So there are two different issues.  One
4   is ownership between the photographer and Liyan.  That's one
5   issue.  The second issue is whether Roadget has any ownership
6   rights.  So those are different entities over there.  All
7   we're saying is that Roadget doesn't own it, and that's all
8   we have to show under the DMCA to show that those letters,
9   the takedown notices, were knowingly false and sent out for
10  the purpose of interfering with our client's business.
11         THE COURT:  Okay.  Thank you.
12         Let me hear again from --
13         MR. WILLIAMS:  Thank you, Your Honor.
14         THE COURT:  -- defense counsel.
15         MR. WILLIAMS:  So, Your Honor, with regard to some
16  of the points raised by Mr. Hasan, it shows why the
17  relationship of the parties is central to the dispute here.
18  You have a relationship between Roadget and Liyan.  You have
19  a relationship between Roadget and the photographer, and how
20  those are being -- and as the Court noted, they don't claim
21  ownership to it.
22         So with regard to the issues on a motion to
23  dismiss, the question is -- they have to show a standard of
24  fraud, and as we've cited, we believe Rule 9(b) applies here.
25  And if the question of ownership, particularly when it is

1  governed by Chinese law, which we believe is the appropriate
2  issue here because questions of copyright formation --
3  although infringement would be determined in the location
4  where the infringement occurs, ownership is governed by the
5  territory or the country that has the closest relationship to
6  the copyrights here, which would be China.
7         And so the question becomes if they can't clearly
8  articulate who the owner is, then they can't show that
9  Roadget committed fraud and knowingly misrepresented the
10 ownership because of this sort of tangled web of
11 relationships between the photographer -- they don't know
12 whether or not there's an agreement or a relationship between
13 the photographer that they've identified as Roadget's
14 preferred photographer.  There could be work-for-hire issues
15 involved.  There could be a whole host of issues involved
16 that would take this out of the realm of a knowing
17 misrepresentation, particularly under Rule 9(b).  So that's
18 why we believe -- and I think the comments that were just
19 made highlight the fact that there is some confusion with
20 regard to the ownership, which would defeat their 512(f)
21 claim.
22         THE COURT:  Thank you.
23         Do you have any further argument regarding either
24 motion?
25         MR. WILLIAMS:  No, Your Honor, unless the Court has

1   additional questions.
2           THE COURT:  No.  Thank you.
3           Anything further from plaintiff?
4           MR. HASAN:  Yes, Your Honor.  I just wanted to
5   address -- you know, again, when Mr. Williams brought up, you
6   know, the "relating to" or central issue *Camp* [sic] *Flattery*
7   *v. Titan Maritime*, Your Honor, is a Ninth Circuit case --
8           THE COURT:  What is the name again?
9           MR. HASAN:  *Camp Flattery Limited v. Titan Maritime*
10  *LLC*, 647 F.3d 914 at 922.
11          Just like Roadget did here, that arbitration clause
12  utilized "arising under" language and left out the broadening
13  "relating to" language, and what the Ninth Circuit said is
14  that it has no difficulty finding that the parties intended
15  to cover a much narrower scope of disputes, only those
16  relating to the interpretation and performance of the
17  contract itself.
18          Now, also, on that point, because it seems to be
19  the main point that's being addressed, *Vedachalam v.*
20  *Tata American* [sic] *International Corp.*, 477 F.Supp.2d 1080.
21  It's a Northern --
22          THE COURT:  Is this cited in your briefs?
23          MR. HASAN:  It is.  And it was affirmed by the
24  Ninth Circuit as cited.  And then there is *In re: TFT-LCD*
25  *(Flat Panel)*, which is also cited.  And in those cases,

1  Your Honor, it stated that even under the strong presumption
2  in favor of arbitrability, that doesn't overcome the fact
3  that contractually the parties agreed to a narrow clause.
4  And in those cases the same "but for" test was rejected.  It
5  was rejected because in those cases -- the issue, for
6  example, in the *TFT* antitrust litigation -- that agreement in
7  place dealt with price, and that was the issue that was
8  central to the antitrust claims, but arbitration was not
9  compelled because the arbitration clause was narrow.  Same
10 thing here.
11          And the last point I'd make is just with respect to
12 the motion to dismiss.  The only thing that we have to prove
13 is that Roadget doesn't own it.  It can be sorted out, and
14 probably will be during this litigation, as to Liyan versus
15 the photographer, but that doesn't matter -- required element
16 of proof for the 512(f) claim, only that Roadget doesn't own
17 it, and there's no confusion in our allegations over that.
18          MR. WILLIAMS:  Your Honor, may I respond briefly to
19 that point?
20          THE COURT:  Yes.
21          MR. WILLIAMS:  As the cases made clear, under
22 512(f) it is not sufficient to prove that Roadget is not the
23 owner of the copyright.  As the *Lenz v. Universal* case -- the
24 Ninth Circuit made clear, you have to show -- a mistake over
25 ownership, even an unreasonable mistake is not sufficient.

1    They have to show knowledge and intent, that we knowingly --
2             THE COURT:  I understand that, but they don't need
3    to show that they are the owner.
4             MR. WILLIAMS:  That's correct.
5             THE COURT:  Okay.
6             MR. WILLIAMS:  And the last point, Your Honor, more
7    as a housekeeping, we did -- in the motion to compel, we did
8    ask for a stay of discovery pending the ruling.  Fortunately,
9    up until now counsel has been cooperative in terms of
10   extending the deadline for our responses to that discovery
11   but I just --
12            THE COURT:  Yes.  No, I understand.  There are
13   other counsel here, too, who have requested stays pending my
14   decisions.  I will address that in the order.
15            MR. WILLIAMS:  Thank you, Your Honor.
16            THE COURT:  I understand.
17            I did just want to briefly address the ex parte.
18   One of the reasons provided for submitting the ex parte was
19   that there was an assumption that this hearing might be
20   vacated.  We're here.  I don't think the sur-reply is
21   something that should have been filed ex parte.  So I'm going
22   to deny that.
23            MR. HASAN:  Thank you, Your Honor.
24            THE COURT:  Okay.  Anything further?
25            MR. HASAN:  No.  Thank you, Your Honor.

1      THE COURT:  Thank you.  I'll take both motions
2 under submission.  Thank you.
3      (Proceedings adjourned at 1:59 p.m.)
4 ///
5 ///

```
 1
 2
 3
 4                          CERTIFICATE
 5        I certify that the foregoing is a correct transcript
 6   from the electronic sound recording of the proceedings in the
 7   above-entitled matter.
 8   /s/ Julie Messa              June 25, 2024
     Julie Messa, CET**D-403      Date
 9   Transcriber
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```